IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MARTHA THOMASON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-3067 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

JEANNE E. SCOTT, U.S. District Judge:

Plaintiff Martha Thomason seeks judicial review of the final decision of Defendant Commissioner of Social Security that she is not entitled to Disability Insurance Benefits. 42 U.S.C. §§ 416(i) and 423(d). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Court affirms the Commissioner's decision.

STATEMENT OF FACTS

Thomason was born on March 16, 1956. She completed three semesters of college and secured a certification as a certified nursing assistant (CNA). She worked as a CNA until May 18, 2002. She filed her

1

application for disability benefits on June 21. 2002. She stated that her disability began on May 20, 2002.

Thomason suffers from an arthritic right knee, back pain, depression and anxiety. On April 10, 2002, she was seen by H.L. Chen, M.D. for complaints of low back pain and pain in her right knee. He prescribed a muscle relaxant, Lorcet, for the back pain. Record of Proceedings (hereinafter "R.") (d/e 10) at 193.

In June 2002, Thomason saw an orthopedic surgeon, Dr. Leo K. Ludwig, for her knee pain. Dr. Ludwig ordered X-rays of Thomason's knees. The X-rays showed moderate osteoarthritis in the right knee, with moderate narrowing of the lateral tibiofemeral joint compartment, and associated mild genu valgus. R., 131.

On August 15, 2002, Thomason was evaluated by Carl Lawyer, M.D. Dr. Lawyer found that Thomason's gate was normal with lateral deviation on the right foot with walking. Her station was normal, and she was able to bear weight with no apparent difficulty. Her strength was normal in both legs. Both knees had no crepitation with range of motion and were not swollen, red, or tender. Examination of her spine was normal. She was able to tandem walk, walk on toes, squat and arise from a squat, and hop on

both the left and right legs without difficulty. She could walk without the use of an assistive device. R. at 137-40.

On August 15, 2002, Thomason also underwent a psychological evaluation by Linda C. Lanier, PhD. Thomason reported a history of depression and anxiety, but no history of psychiatric hospitalizations. Dr. Lanier opined that Thomason was functioning in the average range intellectually. Dr. Lanier diagnosed major depression, with recurrent to moderate social anxiety disorder. She assigned global assessment of functioning (GAF) of 60. R., 134-36. The GAF is a measurement of a person's psychological, social and occupational functioning. A score between 61 and 70 indicates mild impairment of functioning; a score between 51 and 60 indicates moderate impairment; and a score between 41 to 50 indicates serious impairment. Diagnostic and Statistical Manual of Mental Disorders DSM-IV, 30-34 (American Psychiatric Association, 4th ed. text revision 2000).

On September 2, 2002, Patricia A. Beers, PhD., a state agency psychologist, performed a mental residual functional capacity assessment. She opined that Thomason was capable of substantial gainful activity, but might be more successful in a socially restricted vocational setting. R., 179.

On September 6, 2002, Stanley A. Lewis, M.D., a state agency physician, reviewed the medical evidence. He opined that Thomason could lift 20 pounds occasionally, lift 10 pounds frequently, stand or walk six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. He found no other physical limitations, except that she could not perform work that required climbing ladders, ropes or scaffolds. R., 245-52.

On December 30, 2002, Thomason was evaluated by a psychiatrist, Obdul Reddy, M.D. Dr. Reddy diagnosed Thomason with major depressive disorder with recurrent anxiety and panic disorder, and dysthmic disorder. Dr. Reddy assigned a GAF of 49. R., 225-26. He prescribed Geodon at that time. The Geodon was in addition to the Prozac and Xanax that Thomason had already been taking.

On February 20, 2003, Dr. Chen and Dr. Ludwig both completed a form, presumably supplied by the Plaintiff or her counsel. The form quoted the Social Security Administration Listing of Impairments, Nos. 1.03 and 1.00B2b. 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listing), ¶¶ 1.03, 100B2b. Listing 1.03 describes an impairment for reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively. Listing 1.00B2b defines effective ambulation. The

4

Listing states that effective ambulation means the ability to walk without the aid of another person or an assistive device, such as crutches, canes, or a walker. The form then asked the doctors to check the appropriate box to indicate whether Thomason's condition met or did not meet Listing 1.03. Both doctors checked the statement that "Ms. Thomason's impairment **does meet** or is the medical equivalent of this category." R., 253-54. Neither doctor provided any further explanation of his opinion.

Thomason saw Dr. Reddy in March 2003 for a follow-up appointment. Thomason reported that the Geodon was working wonderfully. She had been able to sleep and did not feel depressed or anxious. Dr. Reddy opined that her depression had significantly improved and assigned a GAF of 69. R., 304.

Dr. Ludwig saw Thomason again on May 5, 2004. Thomason reported sciatic pain, and she walked with a limp. She had limited range of motion. Her X-rays showed increased arthritis in the right knee and significant patellofemoral disease. Dr. Ludwig told her that she could either live with the situation or consider a total knee replacement. Thomason decided to avoid surgery at that time and attempt to live with the pain. Dr. Ludwig prescribed Celebrex for the pain. R., 267

5

In June 2004, Thomason was evaluated by Bruce T. Vest, M.D. Dr. Vest opined that Thomason could frequently lift 20 pounds, and occasionally lift up to 50 pounds. He further opined that she could stand or walk for two hours in an eight-hour work day, and could sit for six hours in an eight-hour work day, as long she could periodically alternate between sitting and standing. Dr. Vest opined that Thomason appeared to have a mild to moderate difficulty with ambulation, although she could ambulate without a cane. Dr. Vest further opined that Thomason could perform sedentary work with limitations on prolonged standing, walking, and stair climbing, and further limited to occasional kneeling, squatting, bending, or stooping. R., 261-65.

Thomason saw Dr. Reddy again on July 28, 2004. The progress notes from that appointment state that she did well on Geodon, but became moody and temperamental when she stopped taking the medication. Dr. Reddy assigned a GAF of 51, and advised her to continue taking the medication. R., 271.

On August 25, 2004, the Commissioner's Administrative Law Judge (ALJ) held a hearing in this case. Thomason appeared with her counsel. Vocational Expert Bonnie Gladden also appeared. Thomason testified that

she lived with her husband and 21-year-old twin daughters. They lived in a one-story home with a basement. She testified that she walked up and down the stairs to the basement to do laundry and to get to her freezer. R., 321-22. Thomason testified that she drove a car around her home town of Taylorville, Illinois, but did not like driving in larger cities, such as Springfield, Illinois. This was primarily due to her feelings of anxiety. R., 323-24. Thomason said that she had a great deal of difficulty dealing with the public at her former work. R., 328. She had no trouble with co-workers or supervisors, but only the public. R., 329.

She generally does not like being in social settings with people she does not know, and she avoids social events for that reason. She said medications help with the anxiety and depression, but they tend to make her sleepy. She has panic attacks about once a month, although she sometimes has had them more frequently. She takes Xanax for the panic attacks. The Xanax usually works in about 10 minutes. R., 331-35.

Thomason does some shopping, but her husband does most of the grocery shopping. She attends church on Sundays. She visits with friends in her home. She cooks, does laundry, washes dishes, vacuums occasionally, and makes beds occasionally. She does not mop. She takes care of her own

personal hygiene, and she dresses herself.  R., 340-45.

Thomason said that her right knee and lower back hurt all the time. R., 345-48.  Her upper back hurts regularly, although not constantly.  She testified that she could stand 15 to 20 minutes without any problems.  She could walk for 20 to 25 minutes.  She testified she could lift a gallon of tea. She testified that she takes painkillers and muscle relaxants for her knee and back pains.  R., 349-50.

> Vocational expert Gladden then testified.  The ALJ asked Gladden:
>
> Assume the past work same as Claimant's.  Exertional capacity limited to a full range of light work with a need for a sit/stand option.  No climbing of ladders, ropes, and scaffolds.  Other postural functions performed occasionally, the need to avoid concentrated exposure to humidity as well as environmental hazards such as unprotected heights and dangerous machinery. How would all those -- well first of all, yeah, would I be correct in concluding that those restrictions would preclude her return to past work?

R., 361.

Gladden opined that the person in the hypothetical question could not perform Gladden's past work.  Gladden then opined that the hypothetical person could perform the job of companion.  She testified that there are

8

30,499 such jobs available in Illinois. R., 362.[1]  Gladden also listed several other jobs that the person could perform.

> The ALJ then qualified her question further:
>
> Okay. So now let me add a limitation. Let's say someone could only have occasional interaction with the public. Not any concerns about the coworkers or supervisors in this hypothetical, just occasional interaction with the public at large. How would that limitation impact or affect the occupational base that you've identified?

R., 366.

Gladden opined that only the companion position would fit that limitation. R., 367.

> The ALJ further limited the hypothetical situation:
>
> All right. Now let's say that there's an individual -- well how would you define, for example, do you have an understanding you could, an objective quantification with regard to if someone says complex tasks. Is that just -- if someone can't do complex tasks but can otherwise perform, what -- would that mean that there'd be limited to simple and repetitive or is there some sort of additional --
> . . . .
> Yeah. So in other words even if someone were -- an additional limitation where that someone could not perform complex tasks, you know, as part of work, would the companion job still be preserved?

---

[1] Gladden testified that her analysis of the numbers of available jobs in the region was limited to jobs available in the state of Illinois. R., 359.

R., 368.  Gladden responded that the job of companion would still fit the hypothetical.  Id.

The ALJ summarized her question, "All right.  Thanks.  So then again, I mean, in terms of this companion job, it's your testimony that it meets the hypothetical that I gave you, right?"  R., 374.

Gladden responded, "Yes."  Id.

The ALJ then issued his decision on December 29, 2004.  R.,10-24. The ALJ followed the five-step analysis set forth in the Social Security Administration Regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If true, Step 2 requires the claimant to have a severe impairment.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If true, Step 3 requires a determination of whether the claimant is so severely impaired that she is disabled regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d). The listings of such severe impairments are set forth in the Listings.  20 C.F.R. Part 404 Subpart P, Appendix 1.  The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to her prior work considering her residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ determined that Thomason met her burden at Steps 1 and 2 of the Analysis. She was not currently gainfully employed. She has severe impairments with her arthritis, low back pain, depression and anxiety problems.

The ALJ determined that Thomason did not meet any of the Listings at Step 3 of the Analysis. The ALJ rejected Thomason's claim that she met Listing 1.03. The ALJ dismissed the opinions of Drs. Chen and Ludwig that

Thomason met this Listing. The ALJ explained, "[T]here is no record of the claimant undergoing any other surgery on her right knee or any other major weight-bearing joint. Furthermore, the claimant is able to ambulate effectively and independently. Accordingly, despite assertions to the contrary, Listing 1.03 is not met or equaled." R., 17. The ALJ also found that Thomason did not meet any of the Listings for psychological or psychiatric disorders. R., 18-20. Thomason does not challenge the ALJ's findings that she does not meet the psychological or psychiatric Listings.

At Step 4, the ALJ determined that Thomason had the RFC to perform light work subject to several restrictions. The ALJ found that Thomason needed a sit/stand option; she could only occasionally climb ramps, climb stairs, balance, stoop, kneel, crouch and crawl; but could never climb ladders, ropes or scaffolds. The ALJ found that Thomason should avoid concentrated exposure to humidity, unprotected heights and dangerous machinery. He also found that she could perform work that requires only occasional interaction with the general public and does not require performance of complex tasks. R., 21. Based on this RFC, the ALJ concluded that Thomason could not return to her prior work as a CNA. Id.

At Step 5, the ALJ determined that the Commissioner had established

that Thomason could perform a significant number of jobs in the national economy. The ALJ based this conclusion on Gladden's testimony that Thomason could perform the job of companion, and 30,000 such jobs were available in Illinois. R., 22.

Thomason appealed the decision of the ALJ to the Commissioner's Appeal Council. The Appeals Council denied her request for review on February 11, 2005. R., 4. Thomason then brought this action for judicial review.

## ANALYSIS

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v.

Chater, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's decision in this case is supported by substantial evidence. The medical evidence from Drs. Lawyer, Lewis, and Ludwig, along with Thomason's own testimony, supports the conclusion at Step 3 of the Analysis that she does not meet Listing 1.03. Listing 1.03 describes an impaired individual who, after reconstructive surgery, cannot ambulate without a walker, canes, crutches, or other assistance. Thomason has not had such surgery and can walk independently without assistive devices. She testified that she walks up and down the stairs to do laundry. Drs. Lawyer, Vest, and Ludwig all noted that she walked without assistive devices. She does not meet this Listing.

The evidence also supports the ALJ's findings at Step 4. The findings from Drs. Lawyer, Lewis, and Vest all support the ALJ's findings that Thomason had the RFC to perform light work subject to the physical limitations listed by the ALJ. Thomason's testimony and the psychological evaluations support the additional limitations on contact with the public and limitations on performing complex tasks. The evidence supports the conclusion that Thomason could not perform her prior work.

The vocational expert's testimony supports the ALJ's conclusion at

Step 5 that the Commissioner proved that Thomason could perform a substantial number of jobs in the national economy. Gladden testified that Thomason could perform the job of companion and that over 30,000 such jobs exist in Illinois.

Thomason argues that the ALJ improperly failed to give controlling weight to the opinions of Thomason's treating physicians, Drs. Chen and Ludwig. These physicians opined that she met Listing 1.03. The opinions of treating physicians are to be given controlling weight if they are supported by other medical evidence and are not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); Social Security Rule 96-2P. Here, the opinions of Drs. Chen and Ludwig are inconsistent with substantial evidence in the record. As discussed above, Thomason can walk without assistive devices. She therefore does not meet Listing 1.03. The doctors' opinions are inconsistent with this evidence. The ALJ's decision to reject the opinions of these doctors is clearly supported by substantial evidence.

Thomason also challenges the ALJ's credibility determination regarding Thomason's testimony. The Court will not revisit credibility determinations unless they are patently wrong. See e.g., Diaz, 55 F.3d at

15

308. The Court sees no basis to question the ALJ's credibility determinations.

Thomason also argues that the vocational expert's testimony is insufficient to support the determination at Step 5. The Court disagrees. The ALJ's hypothetical questions included all of the various restrictions on Thomason's RFC. The vocational expert concluded that even with all the restrictions, Thomason could still perform the job of companion. Gladden testified that 30,000 such jobs exist in Illinois. That testimony is substantial evidence that Thomason can perform a significant number of jobs that exist in the national economy. That evidence meets the Commissioner's burden at Step 5.

Thomason argues that the ALJ failed to include within the hypothetical question restrictions on stooping, squatting, bending or crawling. The Court disagrees. Dr. Vest opined that Thomason could perform these positions occasionally. R., 263. The hypothetical question included a limitation that "[o]ther postural functions performed occasionally." R., 361. That was sufficient to include these restrictions in the hypothetical question.

Thomason also argues that she should be considered approaching old

age because she's almost 50. The Commissioner's regulations state that persons 50 to 54 years of age are considered to be closely approaching advanced age. 20 C.F.R. § 404.1563(c) & (d). Thomason was 48 years old at the time of the hearing. The ALJ, thus, properly did not treat her as a person approaching advanced age.

Thomason also argues that she is limited to sedentary work. The ALJ found that she could perform light work with several specific limitations noted above. The ALJ's finding is supported by substantial evidence. Dr. Lewis, in particular, opined that she could perform light work. The Court will not re-weigh the evidence. The ALJ's finding of Thomason's RFC is supported by substantial evidence.

THEREFORE, the Defendant's Motion for Summary Affirmance (d/e 16) is ALLOWED. The Plaintiff's Motions for Summary Judgment (d/e 12 & 13) are DENIED. The decision of the Commissioner is affirmed. All pending motion are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: January 30, 2006.

    FOR THE COURT:

                                        s/ Jeanne E. Scott
                                        JEANNE E. SCOTT
                              UNITED STATES DISTRICT JUDGE